[Cite as *State v. Leugers*, 2018-Ohio-5219.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MERCER COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 10-18-10

      v.

DAVID R. LEUGERS,              O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Mercer County Common Pleas Court
Trial Court No. 17-CRM-040

Judgment Affirmed

Date of Decision: December 26, 2018

APPEARANCES:

    *Joseph A. Benavidez* **for Appellant**

    *Matthew K. Fox and Joshua A. Muhlenkamp* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, David R. Leugers ("Leugers"), brings this appeal from the June 7, 2018, judgment of the Mercer County Common Pleas Court sentencing him to 25 years to life in prison after Leugers was convicted of two counts of Rape of a person less than thirteen years of age in violation of R.C. 2907.02(A)(1)(b), both felonies of the first degree. On appeal, Leugers argues that there was insufficient evidence presented to convict him, and that his convictions were against the manifest weight of the evidence.

*Procedural History*

{¶2} On April 20, 2017, Leugers was indicted for two counts of Rape in violation of R.C. 2907.02(A)(1)(b), both felonies of the first degree (Counts 1 and 3), and two counts of Rape in violation of R.C. 2907.02(A)(2), both felonies of the first degree (Counts 2 and 4). It was alleged that Leugers raped his 10-year-old daughter anally, and through cunnilingus, on or about March 25-26, 2017, when Leugers was exercising his weekend visitation. Leugers pled not guilty to the charges.

{¶3} Leugers waived his right to a jury trial and elected to proceed to a bench trial. Just prior to the trial, the State dismissed the two counts of Rape in violation of R.C. 2907.02(A)(2) (Counts 2 and 4 of the indictment), and proceeded to trial on

the two Rape counts under R.C. 2907.02(A)(1)(b) (Counts 1 and 3 of the indictment).

{¶4} At trial, the State presented the testimony of ten witnesses including the victim and a doctor who examined her just over a week after the alleged incident. The doctor found a small tear that was healing on the victim's hymen[1] and bruising on the victim's hips that could be consistent with a sexual assault.

{¶5} Leugers testified in his own defense, denying the allegations. Leugers also called four additional witnesses, including his girlfriend, Amanda, who was living with him at the time of the incident. Both Leugers and Amanda testified that they were playing cards until 3 or 4 a.m. at a neighbor's apartment on the night of the alleged incident, and that the victim's bed would not have held the weight of Leugers and the victim.

{¶6} The parties submitted written closing arguments. Afterward, the trial court filed a journal entry analyzing the evidence and finding Leugers guilty of both counts of Rape. The trial court specifically found K.H. credible, and did not find the testimony offered by the defense credible.

{¶7} On June 4, 2018, the matter proceeded to sentencing. Leugers was ordered to serve 25 years to life in prison on both counts of Rape, concurrently. A judgment entry memorializing this sentence was filed June 7, 2018. It is from this

---

[1] The victim indicated that Leugers had initially tried to penetrate her vaginally, but was unable.

judgment that Leugers appeals, asserting the following assignment of error for our review.

**Assignment of Error**
**The [trial court] erred in finding appellant guilty as the verdict was against the manifest weight of the evidence and there was insufficient evidence to have found all essential elements of the offense beyond a reasonable doubt.**

{¶8} In his assignment of error, Leugers argues that there was insufficient evidence presented to convict him of both counts of Rape, and that his convictions were against the manifest weight of the evidence.

Standard of Review

{¶9} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id*. When an appellate court reviews a record upon a sufficiency challenge, " 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶10} By contrast, in reviewing whether a verdict was against the manifest weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins* at 387. In doing so, this Court must review

the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.* Nevertheless, a reviewing court must allow the trier of fact appropriate discretion on matters relating to the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231, 227 N.E.2d 212 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

Controlling Authority

**{¶11}** In this case, Leugers was convicted of two counts of Rape, both in violation of R.C. 2907.02(A)(1)(b), which reads,

> **(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:**
>
> **\* \* \***
>
> **(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.**

Evidence Presented by the State

{¶12} Leugers and Serina H. are the parents of the victim in this matter, K.H. Leugers and Serina began dating when Leugers was 19 years old and Serina was 14. Leugers and Serina never married. Serina was pregnant with K.H. when they separated.

{¶13} Leugers was established as K.H.'s biological father, and after some initial difficulty between the parents concerning visitation time, Leugers began to exercise visitation with K.H. every other weekend. By all accounts in the testimony, in the years immediately preceding the alleged incident, Leugers and Serina got along well when it came to parenting K.H., and K.H. enjoyed spending time with her father.

{¶14} The State's testimony indicated that on March 24, 2017, K.H. was sick and did not go to school. K.H. was 10 years old at the time. She was scheduled to be with Leugers after school that weekend for his visitation, but since she was sick, Leugers got her early on Friday.

{¶15} Leugers had an apartment in Coldwater that he shared with his girlfriend Amanda and their 7 year old son, who was K.H.'s half-brother. Although Leugers and Amanda were still living together and dating, Leugers had indicated their relationship was having trouble, that he was thinking about breaking up with Amanda, and that he was having sexual relations with a neighbor.

{¶16} K.H. testified that while she was with her father for that weekend visitation he asked her when they were alone in his bedroom if she knew what sex was. K.H. testified that it was an awkward moment, and that she told her father that she did know what sex was from television shows.

{¶17} K.H. testified that late on Saturday night, or early on Sunday morning, she was in her bedroom that she shared with her half-brother. They slept in separate beds that were a few feet apart. K.H. testified that she and her brother had gone to bed and watched a movie in their room. K.H. testified that she was also playing games on her tablet, that her brother had fallen asleep at some point, and that the lights were off.

{¶18} K.H. testified that while she was in bed on her side, Leugers came into the room, naked. She testified that Leugers turned her onto her back, pulled down her pajama pants and her underwear, got on top of her, and that he tried to insert his penis into her vagina. K.H. testified that Leugers was unsuccessful, and that Leugers then put her legs over his shoulders and performed cunnilingus on her.[2] K.H. testified that she was disgusted and surprised. K.H. testified that Leugers then penetrated her anally with his penis.[3] K.H. testified that it was painful. She also testified that she made an expression and Leugers "shushed" her. (Tr. at 154). K.H.

---

[2] K.H.'s actual words were that Leugers "lick[ed] [her] front part." (Tr. at 152).
[3] K.H.'s actual words were that Leugers "put his front area in [her] butt." (Tr. at 153).

testified that she did not want to make noise because she did not want to wake her half-brother.

{¶19} K.H. testified that Leugers eventually got off of her, that she "scooched" over to the other side of the bed and that Leugers laid down beside her. K.H. testified that Leugers said he was sorry, and that "he was showing [her] how boys like [her]." (Tr. at 154). K.H. testified that Leugers tried to kiss her and that he made her promise not to tell anyone.

{¶20} K.H. testified that Leugers then told her that she should take a bath, and that she should not put the clothes back on that she had been wearing. K.H. testified that after she bathed, she went back to her room and Leugers went back to his.

{¶21} The next day, K.H. went to a "PTO carnival" at her half-brother's nearby school with Leugers, Amanda, and her half-brother. K.H. testified that although there were officers present at the carnival, she was afraid of her father so she did not tell anyone about the incident. She was returned to her mother that evening, and did not tell her mother at that time about the incident. On that same Sunday night when she returned home, K.H. testified that she experienced bleeding, although she had not started her period yet.

{¶22} During the next week, K.H. went to school. Her mother testified that K.H. was acting odd, but she did not know why. Serina testified that the very next

weekend K.H. was scheduled to be with her father again to make up for a prior missed weekend, but K.H. adamantly did not want to go, which Serina testified was unusual.

{¶23} On the Sunday of the weekend following the incident, K.H. told her mother what happened with Leugers. Serina spoke to her mother and her boyfriend and decided it would be best if K.H. saw a female doctor that they trusted, so they waited until the next morning to try to make an appointment with the female OB/GYN who had delivered K.H. However, that doctor indicated that she did not deal with this type of situation, and that K.H. should be taken to a hospital.

{¶24} K.H. still went to school the next day because she did not want to get "behind." She told a friend at school about the incident. After school K.H. was taken to a local hospital, and the matter was simultaneously investigated by the police. As the local hospital was unprepared to deal with K.H., she was scheduled the next day to visit the CARE Clinic in Dayton to have a medical examination and to be forensically interviewed by the CARE House.

{¶25} The medical examination of K.H. was conducted at the CARE Clinic by Dr. Margaret Soulen. Dr. Soulen testified that K.H. had bilateral bruising on her hips, tenderness in her hips, and a "healed" injury to her hymen. Dr. Soulen testified that she could not date the bruises, but the injury to the hymen was "most consistent with a penetrative injury." Photographs of the injuries were introduced into

evidence. Dr. Soulen testified that in her opinion, her exam findings were consistent with a possible sexual assault.[4]

{¶26} The day after the medical exam, K.H. spoke with a forensic interviewer at the CARE House, and that interview was recorded and introduced into evidence. K.H.'s narrative from the forensic interview was largely consistent with her testimony at trial, though there were some small differences in ordering the events.

### Sufficiency of the Evidence

{¶27} Leugers argues on appeal that the State presented insufficient evidence to convict him of two counts of Rape of an individual under the age of 13 as charged in R.C. 2907.02(A)(1)(b). However, in his brief, Leugers largely focuses on the conflicting testimony presented by the State and the defense, which is an argument more properly directed to the weight of the evidence. He makes no specific argument claiming that the State's testimony was insufficient to convict him when viewed in the light most favorable to the State, as the standard of review requires.

{¶28} Nevertheless, to the extent that Leugers does make a sufficiency challenge, K.H., who was 10 years old at the time of the incident and 11 years old

---

[4] Dr. Soulen testified that she was not aware at the time of her examination of any purported anal injury to K.H. Testimony indicated that Serina provided a narrative to a sexual assault nurse examiner and that narrative was then used to determine the examination of K.H., who was not forensically interviewed until the next day, wherein she made it clear that she was actually raped anally. Nevertheless, Dr. Soulden's report did not note any anal injuries.

at the time of trial, specifically testified to being raped by Leugers. She testified that Leugers "licked" her vagina, and that Leugers penetrated her anally with his penis. This testimony alone, if believed, would be sufficient to convict Leugers of two counts of Rape as charged. *State v. Barrie*, 10th Dist. Franklin No. 15AP-848, 2016-Ohio-5640, ¶ 21; *State v. Pryor*, 5th Dist. Stark No. 2017CA00122, 2018-Ohio-2712, ¶ 28 ("The testimony of one witness, believed by the trier of fact, is sufficient to establish a fact in question."). However, this was not the only evidence presented by the State.

{¶29} The State also presented testimony that there was bruising on K.H.'s hips, and that her hymen had a small tear that was healing, which could corroborate her claim that Leugers attempted to penetrate her vaginally. In addition, the State presented testimony from K.H.'s mother that K.H. was acting strange the week after the incident. Furthermore, K.H.'s story remained essentially consistent from her forensic interview to the trial.

{¶30} Based on the evidence presented, when viewing it in the light most favorable to the State, we cannot find that insufficient evidence was presented to convict Leugers of two counts of Rape. His argument is thus not well-taken.

Evidence Presented by the Defense

{¶31} Leugers testified in his own defense and denied raping K.H. He indicated that on the night in question he and his girlfriend Amanda were playing

cards and other games at a neighbor's house until 3 or 4 a.m. Although Leugers had a prior relationship with this neighbor, it was not the same neighbor he was now having sexual relations with. While Leugers was at the neighbor's house playing cards, he indicated that K.H., his son, and the neighbor's son were all playing games at his apartment. Amanda and the neighbor testified similarly at trial.

{¶32} Leugers, Amanda, and the neighbor all testified that on the weekend of the purported incident K.H. was ill. They testified that at one point while they were playing cards together K.H came over to the neighbor's house complaining about being ill and that she was scratching her head. Leugers and Amanda both testified that Amanda took K.H. home and treated her for lice and that K.H. then went to bed.

{¶33} Leugers and Amanda both testified that when they went to bed that night, they had sexual relations and that Leugers then took a brief shower. Afterward, they went to sleep. Amanda testified that she was a light sleeper and she would have heard if Leugers got out of bed. In addition, Leugers claimed that he did not walk around the house naked, ever, due to a skin condition that he was embarrassed of.

{¶34} Leugers and Amanda also testified that K.H.'s bed was only designed to hold 165 pounds, although it was relatively new. Leugers testified that at the time of the incident he weighed approximately 250 pounds and his daughter weighed

somewhere around 75 pounds. Leugers testified that it would not have been possible for the bed to hold their combined weight. In addition, Leugers and Amanda also testified that their son was only a few feet away from where K.H. slept, and he would have had to have been awakened by the events K.H. was describing.

**{¶35}** Further, Leugers testified that they did go to the carnival the day after the incident and that K.H. played happily while there. He also testified that law enforcement officers were present, that he did not hover over K.H. at the carnival, and that he took several cigarette breaks wherein K.H. could have talked to anyone if she needed to. Amanda corroborated this testimony. A woman who knew Leugers also testified that she saw K.H. with her family at the carnival and that there were police officers there.

Manifest Weight of the Evidence

**{¶36}** On appeal, Leugers also argues that his convictions for Rape were against the manifest weight of the evidence. Specifically, he contends that he presented an "alibi" through the testimony of the defense witnesses and that K.H.'s testimony simply did not fit with the timeline of events as testified to by the defense witnesses. He also argues that there was no physical evidence and that K.H.'s testimony was inconsistent.

**{¶37}** At the outset, we note that Leugers never formally filed a "Notice of Alibi" pursuant to Crim.R. 12.1. Nevertheless, his purported alibi does not show

that the acts could not have been completed as alleged. Leugers himself testified that on the night in question while the children were next door at his residence, he was playing cards at the neighbor's residence. He testified that either he or Amanda checked on the children every half hour or so. Thus even if he was being truthful that he was at the neighbor's residence playing cards, he still essentially admitted that he repeatedly returned to the house where K.H. was sleeping. Moreover, K.H. only testified that she thought that the incident occurred between midnight and 1 a.m. She was uncertain of the actual time.

{¶38} In addition, Leugers is also incorrect when he argues there was no physical evidence in this matter. K.H. had bilateral bruising on her hips, which could indicate being gripped by hands, and she had a healing tear in her hymen, which could corroborate her testimony that Leugers attempted to penetrate her vaginally. These injuries, as identified by Dr. Soulen, were consistent with K.H.'s story.

{¶39} Furthermore, K.H. took the stand in this case to testify, and the trial court specifically found her to be credible in its entry on the matter. We must defer to the credibility determinations of the factfinder, as the factfinder was able to see and hear the testimony of the witnesses. "Although we consider the credibility of witnesses in a manifest weight challenge, we are mindful that the determination regarding witness credibility rests primarily with the trier of fact because the trier

of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections—observations that are critical to determining a witness's credibility." *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 31, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17, citing *State v. Hill*, 75 Ohio St.3d 195, 205, 661 N.E.2d 1068 (1996) and *State v. Antill*, 176 Ohio St. 61, 66, 197 N.E.2d 548 (1964). In addition, the trial court heard the testimony of Leugers, and was free to disbelieve it. *State v. Jackson*, 10th Dist. Franklin No. 11AP-619, 2012-Ohio-2985, ¶ 16 ("The trier of fact is free to believe or disbelieve all or any of the testimony.").

{¶40} Based on all of the evidence presented, in particular the testimony of the victim and her examining physician, as well as the opportunity for the trial court to evaluate the testimony of Leugers, we cannot find that the trial court clearly lost its way or created a manifest miscarriage of justice in finding Leugers guilty of the two counts of Rape as alleged. Therefore, Leugers' assignment of error is overruled.

*Conclusion*

{¶41} For the foregoing reasons the assignment of error is overruled and the judgment of the Mercer County Common Pleas Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**

-15-