[Cite as *State v. Love*, 2021-Ohio-4470.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
LOGAN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                CASE NO.  8-21-15

    v.

AMY L. LOVE,                           **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Bellefontaine Municipal Court
Trial Court No. 18CRB01668

Judgment Affirmed

Date of Decision:   December 20, 2021

APPEARANCES:

    *Samuel A. Usmani* **for Appellant**

    *Crystal K. Welsh* **for Appellee**

{¶1} Defendant-appellant, Amy Love ("Love"), brings this appeal from the March 29, 2021 judgment of the Bellefontaine Municipal Court sentencing Love to 10 days and jail, with all 10 days suspended, after Love was convicted in a bench trial of Theft in violation of R.C. 2913.02(A)(2), a first degree misdemeanor. On appeal, Love argues that there was insufficient evidence presented to convict her, and that her conviction was against the manifest weight of the evidence.

*Background*

{¶2} On December 19, 2018, Love was charged with Theft in violation of R.C. 2913.02(A)(2). It was alleged that when Love was being evicted from a fully furnished trailer, she took approximately $550 worth of property belonging to Mountain View Mobile Homes. After being contacted by the police, Love returned some of the items, claiming the items were all she had. She pled not guilty to the charge.

{¶3} Trial was scheduled for March 1, 2019, but Love failed to appear so a bench warrant was issued for her arrest. Love was not brought before the court for over a year, appearing next on May 29, 2020. At that time, trial was scheduled for July 14, 2020, and Love was released on her own recognizance. On the second scheduled trial date, Love again failed to appear, and another bench warrant was issued.

{¶4} After Love was located, trial was rescheduled for March 29, 2021.  The trial was finally held that day and after testimony was presented from Love's former property manager and from an officer who investigated the matter, the State rested. Love testified in her own defense.  At the conclusion of the evidence, Love was convicted of Theft as charged.

{¶5} Love was ordered to serve 10 days in jail and pay a $250 fine.  All 10 days of incarceration were suspended on the condition that Love remain a law abiding citizen for two years.  A judgment entry memorializing Love's conviction was filed March 29, 2021.  Love now appeals from the trial court's judgment and sentence, asserting as follows:

**"Appellant's Assignments of Error – Manifest Weight and Sufficiency of the Evidence"**

(Appt.'s Br. at 3).  Notably, Love does not separately argue her "assignments of error" and her brief is not entirely compliant with App.R. 16.  Nevertheless, we will proceed to separately address her "assignments of error."

*Sufficiency of the Evidence*

{¶6} In her "assignments of error," Love argues that she did not "knowingly" remove items from the trailer she had been evicted from.  She contends, *inter alia*, that items were removed by some "neighborhood kids" who were assisting her with the move.

Standard of Review

{¶7} "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Groce*, 163 Ohio St.3d 387, 2020-Ohio-6671, ¶ 7. Therefore, our review is de novo. *In re J.V.*, 134 Ohio St.3d 1, 2012-Ohio-4961, ¶ 3. In a sufficiency-of-the-evidence inquiry, the question is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow *any* rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus (superseded by constitutional amendment on other grounds as stated in *State v. Smith*, 80 Ohio St.3d 89, 102, (1997), fn. 4) following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

Controlling Statutes

{¶8} In this case, Love was convicted of Theft in violation of R.C. 2913.02(A)(2), which reads as follows:

**(A)  No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:**

**\* \* \***

**(2)  Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]**

Case No. 8-21-15

{¶9} In challenging her conviction, Love specifically argues that the State failed to establish the mental culpability of "knowingly," which is codified in R.C. 2901.22(B), and reads as follows:

> **A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.**

Evidence Presented at Trial

{¶10} Rose K. testified that in December of 2018 she was the property manager for Mountain View Mobile Homes. Rose testified that Love rented a fully furnished one-bedroom unit at Mountain View Mobile Homes, stating all Love had to do was "bring [he]r clothes." (Doc. No. 86).[1] The unit came with everything including silverware and bedding.

{¶11} Love was eventually evicted from the property. After Love vacated the premises pursuant to the eviction, Rose entered the residence and discovered that numerous items were missing. The missing items included a mattress, sheets, pillows, towels, cutlery, bowls, and a cutting board. Rose testified that Love did not have permission to take the items. Rose testified that she eventually received the

---

[1] The transcript was docketed along with the other items in the record. Each page of the transcript was docketed as an individual document, thus we cite the "Docket Number" rather than page number.

-5-

majority of the items back after law enforcement became involved, so she was not seeking restitution for those items.

{¶12} On cross-examination, Rose acknowledged that she did not see Love physically moving the items out of the residence and she was not aware who physically moved the items.

{¶13} Deputy Adam Wood of the Logan County Sheriff's Office testified that he investigated the matter after being dispatched to the residence in Zanesfield, Ohio. Deputy Wood was eventually able to make contact with Love, and Love admitted that she was in possession of some of the items that were reported stolen by Rose. Following multiple contacts, Deputy Wood was able to get Love to return the stolen items. Deputy Wood testified that he charged Love with theft because she acknowledged being in possession of items that she knew did not belong to her, and she did not make any effort to voluntarily contact Mountain View Mobile Homes to return the items despite knowing she had them.

{¶14} On cross-examination, Deputy Wood testified that he was present when Love returned the property she had taken. He testified that Love returned the property within about 48 hours of being contacted by him. At the conclusion of Deputy Wood's testimony, the State rested its case.

Analysis

{¶15} The evidence is undisputed that Love rented a furnished trailer at Mountain View Mobile Homes, that she was evicted from her residence, and that after she left the residence she was in possession of numerous items that were owned by Mountain View Mobile Homes such as a mattress and kitchen utensils. She returned some of the items, but only after she was pressed by law enforcement to do so.

{¶16} Love claims on appeal that the evidence presented was insufficient to convict her. She argues specifically that she did not "knowingly" take the items because they had been moved by "neighborhood kids"; however, this argument is based primarily on Love's testimony in her case-in-chief, and is thus more appropriate for a weight of the evidence analysis. *State v. Leugers*, 3d Dist. Mercer No. 10-18-10, 2018-Ohio-5219, ¶ 27.

{¶17} Notwithstanding this point, when viewing the evidence in the light most favorable to the State as we are directed, the evidence supports that Love knew she had improperly obtained various items from the trailer. She had moved into a fully furnished residence and left with the mattress and numerous kitchen items that were not hers.

{¶18} Furthermore, although Love did return some, or all, of the taken property, she only did so once she was prodded, repeatedly, by law enforcement.

Here, when viewing the evidence in a light most favorable to the State, a reasonable factfinder could determine beyond a reasonable doubt that Love knowingly obtained or exerted control over property beyond the scope of the express or implied consent of the owner with purpose to deprive the owner. *State v. Smidt-Walker*, 8th Dist. Cuyahoga No. 90030, 2008-Ohio-3034; *State v. Williams*, 12th Dist. Butler No. CA2002-09-214, 2003-Ohio-4453. Therefore, her first "assignment of error" is overruled.

*Manifest Weight of the Evidence*

{¶19} Love next argues that even if there was sufficient evidence presented to convict her, her conviction was against the manifest weight of the evidence.

Standard of Review

{¶20} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, " 'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier-of-fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier-of-fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the

witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Evidence Presented by the Defense; Rebuttal Testimony*

**{¶21}** Love testified in her own defense that she had been living in the trailer at Mountain View Mobile Homes for six months prior to her eviction. She testified that when she was moving, she put some of her personal items in her SUV. Love then testified she was involved in an accident that totaled her vehicle, preventing her from doing more of the move herself. She testified that she did not know a lot of people in the area so she got some "neighborhood kids" to help her get the rest of her items from the trailer. Regarding the "neighborhood kids," Love testified:

> **[I] [a]sked them to bring me certain things, basically a pile of this and a pile of that. Which was what I had separated for – to know what was mine. And I had a change jar, a whiskey jar full of change. So they went and got the items I requested. They also got the bed mattress, I would assume because I had it propped up on its side intending to clean the entire place after I got all my items from it.**

(Doc. No. 102).

**{¶22}** Love claimed that she told the "neighborhood kids" specifically what to look for when they were moving her things. She testified that the "neighborhood

kids" dropped the things off while she was at work. According to Love, when she got home, the items were just in a pile on her floor and she claimed she had no way to return them.

{¶23} Love claimed that she contacted Rose and told her that she had been in an accident and that Love still needed to get some of her items out. According to Love, Rose responded that the police had already been contacted due to the missing items. Love claimed that she felt that she could not go back to the property because of Rose's statement, and that she had no transportation to return the mattress. Love testified that she eventually returned the mattress, a box of kitchen items, a bag of linens, and an HD antenna from the TV.

{¶24} During her testimony, Love also indicated that she had some problems with Rose previously, including one failed eviction action.

{¶25} On cross-examination, Love testified she did not call the mobile home park when she got home and saw the items that were not hers, claiming that she was going to wait until the next morning. Love claimed she sent a text message the next morning to Rose stating that she had more items to pick up from the trailer. Love claimed that it was her intention to return the improperly taken items and clean the trailer, but that was apparently not stated in the test messages. No text messages were actually introduced into evidence.

**{¶26}** Rose testified on rebuttal that Love did not send any text messages to her about returning property that had been taken from the trailer.

Analysis

**{¶27}** Based on her testimony, Love argues that her convictions were against the manifest weight of the evidence. She contends that the mattress and other items were moved by neighborhood kids and that she did not tell the neighborhood kids what to take. The trial court found this story not to be credible, and we will not second-guess a trial court's credibility determinations. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967).

**{¶28}** Moreover, it is reasonable to assume that when Love moved, she was aware that the items she had taken were not hers since they were not hers to begin with. *See State v. Williams*, 12th Dist. Bulter No. CA2002-09-214, 2003-Ohio-4453, ¶ 19 (conviction for theft upheld where appellant took desk from landlord when vacating premises). At the very least, we do not find that the trial court clearly lost its way by convicting Love of Theft in this matter. *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9. This is not one of the "exceptional" cases where the evidence weighs heavily against the conviction. The evidence supports Love's exertion of control over property beyond the scope of the express or implied consent of the owner with purpose to deprive the owner of the property. Therefore, Love's second "assignment of error" is overruled.

*Conclusion*

**{¶29}** For the foregoing reasons Love's "assignments of error" are overruled and the judgment and sentence of the Bellefontaine Municipal Court is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and MILLER, J., concur.**

**/jlr**