[Cite as *State v. O'Boyle*, 2024-Ohio-5480.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                              :

      Plaintiff- Appellee,               :

                                          No. 113577

v.                                          :

DAVID O'BOYLE,                              :

      Defendant-Appellant.               :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** November 21, 2024

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-23-679521-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Karen Greene, Assistant Prosecuting Attorney, *for appellee.*

Mary Catherine Corrigan, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant David O'Boyle appeals his conviction for rape. Because we do not find O'Boyle suffered ineffective assistance of trial counsel and

do not find that his conviction was against the manifest weight of the evidence, we affirm O'Boyle's conviction.

## PROCEDURAL HISTORY AND RELEVANT FACTS

### Procedural History

{¶ 2} O'Boyle was indicted on April 3, 2023. The indictment alleged one count of rape against the victim, M.O., in violation of R.C. 2907.02(A)(2) occurring on or about December 19-20, 2022. It also alleged three counts of rape against the victim, C.O., in violation of R.C. 2907.02 (A)(1)(b). On December 11, 2023, having waived his right to a jury trial, the trial court heard the case. On December 13, 2023, the State dismissed one of the rape counts pertaining to C.O. In rendering its verdict, the trial court found O'Boyle not guilty of the other two counts pertaining to C.O. The trial court found O'Boyle guilty of the rape of M.O. On December 28, 2023, the trial court sentenced O'Boyle to a term of imprisonment of 10 to 15 years and found him to be a Tier III sex offender.

### Trial Proceedings and Testimony

{¶ 3} At trial, 27-year-old C.O. testified that O'Boyle was her father and she had a brother and a younger sister, M.O. C.O. was 13 years old when M.O. was born. C.O. testified that O'Boyle physically and sexually abused her multiple times between the years 2002-2007. She testified that she never told her younger sister M.O. of the sexual abuse, but in 2022 did tell her mother of the sexual abuse. She said she was scared to go to the police.

{¶ 4} Fourteen-year-old M.O. testified at trial. She testified on direct examination that she lived with her father and D.O., her brother, in 2022 when she was 13 years old. She said O'Boyle raped her before Christmas while she was on winter break. She described the incident by stating she was in the hallway. He grabbed her wrist, took her to his room, put her on the foot of his bed, removed her pants and underwear, and put his penis into her vagina. He moved back and forth, but did not ejaculate.

{¶ 5} M.O. testified that at the time of the rape, D.O. was at work. She said that when school resumed after the winter break, she told a friend what happened. On March 6, 2023, M.O.'s friend told school authorities and M.O. was questioned at school. M.O. testified that she told school staff that it was her stepfather who abused her, not O'Boyle, because she lived with O'Boyle. She explained that she named her stepfather so she could leave school, go home, pack a bag, and go to her friend's home. M.O. planned to the tell the police the whole truth. When M.O. was released from school, she went to her friend's house and her friend's mother, J.M., took her to the police station. C.O. went to the police station with them.

{¶ 6} During cross-examination, M.O. testified that she remembered the date of the rape was December 19. She was also asked about making the allegation against her stepfather, and the State did not object. When trial counsel asked about another man, Adam, the State objected. The trial court then warned trial counsel to not ask about material that would fall under the Rape Shield Law.

{¶ 7} J.M. testified her daughter's friend was having trouble and needed help. She was questioned about whether M.O. and C.O. talked about what to tell the police. J.M. said they did not tell each other what to say or conform their stories. After they left the police station, M.O. stayed at J.M.'s house.

{¶ 8} O'Boyle called Amanda Prok, principal of M.O.'s school. Prok testified that the school learned about the allegations from M.O.'s friend. M.O. accused her stepfather, and Prok permitted M.O. to go home. Prok notified Cuyahoga County Department of Children and Family Services ("CCDCFS") regarding M.O.'s disclosure. Ada Jackson, a CCDCFS social worker, testified M.O.'s allegations were investigated and determined to be "indicated." Trial counsel was prohibited from asking about other boys that caused Prok concern with M.O.

{¶ 9} In his defense, O'Boyle also called his son, D.O., his ex-wife L.J., Brook Park Police Detective Klemenec, and his friend David Vahlber as witnesses. D.O. testified he was close with his sister and did not notice anything different about her behavior in the months following the alleged sexual assault. He also testified that in 2022, he would leave for work between 1:30 a.m. and 2:00 a.m. L.J. testified she did not remember getting a message from C.O. regarding C.O.'s allegations. Detective Klemenec testified that when M.O. was interviewed, C.O. was present but that C.O. did not disclose she was also sexually assaulted and he did not sense that C.O. was coaching M.O. He also testified that C.O. was interviewed on a later date. Vahlber testified he knew O'Boyle for years and had been around him and his family and never sensed anything was amiss.

{¶ 10} O'Boyle testified at trial and denied that he would ever sexually abuse his daughters. He admitted to using a belt to discipline his son and C.O. As to allegations of abuse, he testified he heard from the police about M.O.'s allegations in March 2023. Sometime in the summer of 2022, L.J. told him C.O. made an allegation against him. O'Boyle denied sexually abusing either C.O. or M.O.

**Hearing on Motion for New Trial**

{¶ 11} Following trial, O'Boyle's counsel filed a motion for new trial alleging several errors, including his inability to file an alibi before trial because he was unaware M.O. would specify the rape occurred on December 19, 2022, during her testimony.[1] The trial court held a hearing on the motion, and trial counsel stated that because the indictment alleged a range of dates, he could not have prepared an alibi defense prior to trial. Trial counsel stated that after trial, he interviewed witnesses who would testify that O'Boyle was on a hunting trip on December 19, 2022. The State noted that trial counsel brought up the hunting trip at the final pretrial but did not go forward with an alibi defense.

{¶ 12} The trial court noted it was "suspect" that the alibi witnesses determined the dates of the hunting trip only after M.O. testified. The trial court denied the motion for new trial and found that as to any surprise, "the only thing

---

[1] In this appeal, O'Boyle does not address the other grounds for relief raised within the motion for new trial.

that really has been raised by defense counsel is that he wanted more time to question [M.O.'s] credibility."

## LAW AND ARGUMENT

### The Record Does Not Demonstrate Ineffective Assistance of Counsel

{¶ 13} O'Boyle's first, second, and third assignments of error allege that his trial counsel was ineffective. They read:

1. Trial counsel was ineffective for failing to preserve and present an alibi defense.

2. Trial counsel was ineffective for failing to question [D.O.] on whether M.O. was at the home on the day of the alleged incident.

3. Trial counsel was ineffective for failing to proffer the testimony he was prohibited by the rape shield laws from eliciting into the record.

{¶ 14} Within the first assignment of error, he argues trial counsel had an alibi defense and failed to give proper notice to the State or present that defense at trial. Within the second assignment of error, he argues counsel was ineffective for failing to ask D.O. whether M.O. was at the house on the date she testified the rape occurred. Within the third assignment of error, O'Boyle argues that trial counsel failed to proffer evidence not allowed by the trial court pursuant to the Rape Shield Law.

{¶ 15} Our review of counsel's performance is highly deferential. *State v. Korecky*, 2020-Ohio-797, ¶ 20 (8th Dist.). And because we presume licensed attorneys are competent, the party claiming ineffective assistance of counsel bears

the burden of proving counsel's ineffectiveness. *Id.*, citing *State v. Smith*, 17 Ohio St.3d 98 (1985).

{¶ 16} In order to show ineffective assistance of counsel, a defendant must demonstrate trial counsel's performance was both below an objective standard of reasonable representation and that he suffered prejudiced by counsel's deficient performance. *State v. McGee*, 2022-Ohio-2045, ¶ 32 (8th Dist.), citing *State v. Drummond*, 2006-Ohio-5084, ¶ 205, citing *Strickland v. Washington,* 466 U.S. 668 (1984). Prejudice will be established if the defendant can demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 17} Trial counsel's tactical decisions and trial strategy do not form a basis for a claim of ineffective counsel. *State v. Black,* 2019-Ohio-4977, ¶ 35 (8th Dist.) "It is generally presumed that the tactical decision of calling or refusing to call witnesses will not sustain a claim of ineffective assistance of counsel." *State v. Williams*, 2009-Ohio-2026, ¶ 60 (8th Dist.); *State v. Yeager*, 1994 Ohio App. LEXIS 2433, *4 (9th Dist. June 1, 1994) ("The decision to present evidence, alibi or otherwise, is a trial tactic.").

{¶ 18} O'Boyle argues that trial counsel had the ability to discredit M.O.'s testimony through an alibi defense and by having D.O. testify M.O. was not at home on December 19, 2022. Further, he alleges trial counsel did not proffer any evidence of prior allegations by M.O. He argues that had trial counsel pursued these

strategies at trial, the trial court would have acquitted him. The State argues that counsel was not ineffective and OBoyle has not shown the outcome of trial would have been different.

{¶ 19} The indictment alleged that the rape of M.O. occurred between December 19-20, 2022. Trial counsel was aware of the dates in the indictment and was aware of an alibi defense prior to trial. The indictment presented a relatively narrow window of time; as such trial counsel could have presented an alibi defense, but chose not to. Given this, we cannot say that trial counsel's decision to not pursue a specific alibi defense at trial was anything but a tactical one.

{¶ 20} At best, the alibi evidence through witness testimony simply contradicted M.O.'s testimony. We also note that it was only after O'Boyle was convicted did trial counsel decide to bring forth evidence of an alibi. Because of the timing of when the alibi evidence was presented to the trial court, we cannot say it would have altered the outcome of O'Boyle's bench trial, especially in light of the trial court's finding that the timing of the witnesses' ability to determine the dates of the hunting trip was "a little suspect."

{¶ 21} As to the failure to proffer evidence barred by the Rape Shield Law, R.C. 2907.02 (D), which prohibits introduction of "evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity," we cannot find trial counsel was ineffective. We cannot speculate on the evidence that counsel would have proffered, if any. *State v. Fisher*, 2020-Ohio-670, ¶ 22 (8th Dist.) ("[W]hen a defendant bases

a claim of ineffective assistance of counsel on evidence outside of the record, postconviction relief rather than direct appeal is the proper vehicle to raise such a claim."). Accordingly, without a record of what evidence trial counsel may have been prohibited from soliciting at trial that was prohibited under R.C. 2907.02(D), we cannot find ineffective assistance of counsel.

{¶ 22} The first, second, and third assignments of error are overruled.

## The Conviction Is Not Against the Manifest Weight of the Evidence

{¶ 23} O'Boyle's fourth assignment of error reads

4. The guilty verdict cannot be upheld because the evidence and testimony presented at trial did not establish the Appellant's guilt beyond a reasonable doubt.

{¶ 24} Within the fourth assignment of error, O'Boyle argues that his conviction was against the manifest weight of the evidence. He argues that M.O.'s testimony was incredible because her testimony was uncorroborated, M.O. delayed disclosure of the rape and initially named another perpetrator, and her brother did not sense any issues between M.O. and O'Boyle. The State argues that M.O.'s testimony was credible and O'Boyle has not demonstrated a manifest injustice occurred.

{¶ 25} A manifest weight challenge to a conviction asserts that the State has not met its burden of persuasion in obtaining the conviction. *Thompkins*, 78 Ohio St.3d 380, 390. A challenge alleging a conviction is against the manifest weight of the evidence raises factual issues and our review is as follows:

> "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). "Sitting as the 'thirteenth juror,' the court of appeals considers whether the evidence should be believed and may overturn a verdict if it disagrees with the trier of fact's conclusion." *State v. Jordan*, 2023-Ohio-3800, ¶ 17.

{¶ 26} Ohio courts consistently hold that a victim's testimony alone is sufficient to support a rape conviction. *State v. Smith*, 2023-Ohio-1670, ¶ 20 (8th Dist.); *State v. Roan*, 2020-Ohio- 5179, ¶ 21 (8th Dist.); *State v. Blankenship*, 2001 Ohio App. LEXIS 5520, *11 (8th Dist. Dec. 13, 2001). "There is no requirement that a rape victim's testimony be corroborated precedent to conviction." *Roan*, 2020-Ohio- 5179, ¶ 21.

{¶ 27} O'Boyle's arguments go to M.O.'s credibility. At trial, M.O. explained the rape in detail. She also explained why she initially told school officials her stepfather perpetrated the crime. This court has recognized that sexual assault victims' reactions vary and a victim's normal behavior following a crime and delayed disclosure does not mean that a reasonable trier of fact lost its way in finding defendant guilty. *State v. Harris*, 2018-Ohio-578, ¶ 53 (8th Dist.) As such, we cannot say the evidence at trial does not indicate that M.O.'s testimony was wholly

incredible and O'Boyle has failed to show that this is the type of "exceptional case" where the factfinder clearly lost its way.

{¶ 28} The fourth assignment of error is overruled.

**CONCLUSION**

{¶ 29} O'Boyle did not demonstrate that he received ineffective assistance of counsel at trial where the record indicates the decision to not present an alibi defense was a tactical one and it does not show the outcome at trial would have been different had the alibi defense been presented. O'Boyle's complaint that counsel was ineffective for failing to proffer evidence cannot be evaluated where this court would have to speculate as to the content of the evidence.

{¶ 30} The conviction for rape was not against the weight of the evidence. In this case, the victim was able to describe the crime that occurred and explain her actions in naming a different man as the perpetrator of the rape and we cannot say that her testimony was incredible or the trial court lost its way in finding O'Boyle guilty.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

EILEEN A. GALLAGHER, P.J., CONCURS;
FRANK DANIEL CELEBREZZE, III, J., CONCURS (WITH SEPARATE OPINION)

FRANK DANIEL CELEBREZZE, III, J., CONCURRING:

{¶ 32} I agree entirely with the opinion and resolution of the assignments of error. I write separately to express my dismay that appellant was not also convicted of raping C.O.

{¶ 33} C.O. testified in open court, under oath, that when she was a child, appellant had physically and sexually abused her. She stated that she was under ten years old when the abuse occurred and that her youngest memories were from when she was in kindergarten or first grade. She particularly recollected two specific instances of appellant putting his penis in her vagina. In recounting these incidents, C.O. specifically described the positions of her and appellant's bodies and stated that they were on a mattress in one of the bedrooms.

{¶ 34} C.O. testified that when she got older, she told her therapist, sexual partners, and good friends about the abuse that she had endured; however, her accusations against appellant were not reported to police until approximately 20 years after they were alleged to have occurred. There are many reasons for a delayed disclosure like this, and such a delay should not be an impediment to obtaining a

conviction. "A delayed disclosure of sexual misconduct by a minor victim does not render a conviction against the manifest weight of the evidence." *State v. Peterson*, 2024-Ohio-2903, ¶ 20 (8th Dist.), citing *State v. Harris*, 2018-Ohio-578, ¶ 53 (8th Dist.).

{¶ 35} It is clear, here, that C.O. finally reported what happened to her as a child because she had learned that M.O. had suffered the same abuse. She testified that she had not told M.O. about her experience at the hands of her father, but as she listened to M.O.'s statement at the police station, the sexual abuse sounded "more or less the same" as how she had experienced it. She did not say anything at the time but returned to the police station one week later to report what had happened to her as a child.

{¶ 36} I am a father and a grandfather and have been a jurist at both the trial court and appellate levels. In my lengthy career, I have seen far too many cases involving sex offenses against children, but the most difficult ones are those involving a biological parent. It is obvious that what C.O. experienced as a child has had a significant impact on her life. I commend C.O. (and, of course, M.O.) for her bravery throughout this matter and hope she is able to overcome her experiences and continue forward with her life.