[Cite as *In re K.S.*, 2026-Ohio-79.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY

IN RE:

K.S.,

ADJUDICATED DELINQUENT
CHILD.

CASE NO. 14-25-13

OPINION AND
JUDGMENT ENTRY

Appeal from Union County Common Pleas Court
Juvenile Division
Trial Court No. 2024JA021

**Judgment Affirmed**

Date of Decision:  January 12, 2026

APPEARANCES:

*Alison Boggs* for Appellant

*Melissa A. Chase* and *Samantha M. Hobbs* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Adjudicated delinquent child-appellant, K.S., appeals the February 25, 2025 judgment entry of disposition of the Union County Court of Common Pleas, Juvenile Division. For the reasons that follow, we affirm.

{¶2} The charges in this case arose from allegations made by a child victim concerning acts occurring while she was visiting her father, Nathan S. ("Nathan"), at the residence of his girlfriend, Kayla S. ("Kayla"), who is K.S.'s mother. According to the complaint, the alleged conduct occurred between November 29, 2021 and April 4, 2023, while the child victim was 5 or 6 years old. Based on these alleged dates as well as the evidence presented at trial, the trial court determined that K.S. was 12 or 13 years old at the time of the offenses.[1]

{¶3} On March 12, 2024, a complaint was filed in the juvenile court against K.S. charging him with three counts of rape in violation of R.C. 2907.02(A)(1)(b), (B), felonies of the first degree if committed by an adult. On April 16, 2024, K.S. appeared and denied the charges in the complaint.

{¶4} On September 25, 2024, the State filed a motion requesting the trial court to permit the child victim and a child witness to testify by remote contemporaneous video. The following day, the State moved for a competency

---

[1] The timeframe specified in the complaint extended into a period during which K.S. would have been 14 years old.

determination for both children under Evid.R. 601, and the trial court determined that it would conduct an individual voir dire of each witness prior to their testimony. On October 1, 2024, K.S. filed a memorandum in opposition to the State's remote testimony motion. On October 8, 2024, the trial court granted the State's motion, ordering that the witnesses could testify from a separate room by remote contemporaneous video after determining that R.C. 2152.82 mandated this procedure based solely on the witnesses' ages.

{¶5} The case proceeded to an adjudicatory hearing on October 9, 2024, after which the trial court found K.S. to be a delinquent child as alleged in all three counts in the complaint.[2]

{¶6} At the dispositional hearing on February 25, 2025, the trial court committed K.S. to the legal care and custody of the Ohio Department of Youth Services ("DYS") for a minimum period of one year (not to exceed K.S.'s 21st birthday) as to each count, respectively. K.S. was ordered to serve the commitment periods consecutively for an aggregate commitment of three years (not to exceed K.S.'s 21st birthday). However, this commitment was suspended, and K.S. was placed on community control. As part of his community control, K.S. was ordered to serve 90 days in detention as to each count, respectively, with

---

[2] Because the trial court determined that K.S. was 12 or 13 years old at the time of the offenses, the trial court concluded that K.S. was not subject to classification as a juvenile offender registrant.

the detention order as to Counts Two and Three suspended conditioned on his compliance with his community-control sanctions.

{¶7} K.S. filed his notice of appeal on March 25, 2025. He raises five assignments of error for our review. For ease of our discussion, we will begin by addressing K.S.'s first assignment of error, followed by his second, third, and fourth assignments of error together, then his fifth assignment of error.

**First Assignment of Error**

**The Trial Court Lost Its Way When Reviewing The Evidence, Resulting In a Decision That Is Against The Manifest Weight And Sufficiency Of The Evidence.**

{¶8} In his first assignment of error, K.S. argues that his rape adjudications are based on insufficient evidence and are against the manifest weight of the evidence. In support of his sufficiency-of-the-evidence challenge, K.S. argues that a rational trier of fact could not have found the essential elements of rape proven beyond a reasonable doubt because the State's case rested entirely on uncorroborated hearsay. Further, K.S. argues his rape adjudications are against the manifest weight of the evidence because the trial court lost its way by relying on evidence that was not credible, namely the video recording of the non-testifying child victim's child advocacy center ("CAC") interview and the contradicted testimony of the child witness.

*Standard of Review*

**{¶9}** The same legal standards for evaluating the weight and sufficiency of evidence apply in juvenile adjudications as in adult criminal cases. *In re G.F.*, 2024-Ohio-5366, ¶ 9 (3d Dist.). Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

**{¶10}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.). *See also State v. Berry*, 2013-Ohio-2380, ¶ 19 (3d Dist.) ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶11} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

{¶12} We begin by reviewing the sufficiency of the evidence supporting K.S.'s rape adjudications under R.C. 2907.02. That statute provides, in its relevant part, that "[n]o person shall engage in sexual conduct with another when . . . [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b). "'Sexual conduct'" means in relevant part, "vaginal intercourse between a male and female . . . and

cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body . . . into the vaginal . . . opening of another. Penetration, however slight, is sufficient to complete vaginal . . . intercourse." R.C. 2907.01(A). "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶13} On appeal, K.S. contends that his rape adjudications are based on insufficient evidence because they are based on hearsay evidence. In other words, K.S. asserts that no rational trier of fact could have found the essential element of sexual conduct proven beyond a reasonable doubt. K.S.'s argument is without merit. *Accord State v. Brinkman*, 2024-Ohio-1005, ¶ 15 (3d Dist.). Indeed, "[t]he Supreme Court of Ohio has held that when reviewing the sufficiency of the evidence, an appellate court is to consider all of the evidence admitted at trial, even if the evidence was improperly admitted." *Id.*, quoting *State v. Ward*, 2011-Ohio-518, ¶ 20 (9th Dist.).

{¶14} Therefore, when considering all of the evidence presented at trial, we conclude that the State presented sufficient evidence that K.S. engaged in sexual conduct with the child victim. *See State v. Leugers*, 2018-Ohio-5219, ¶ 28 (3d Dist.). Specifically, the State presented testimony from Molly Miller

("Miller"), a forensic interviewer and mental health advocate at the CAC at Nationwide Children's Hospital, who identified State's Exhibit 2 as the video recording of her interview with the child victim and State's Exhibit 3 as her corresponding report. A portion of State's Exhibit 2 was played for the trial court. During this video of the forensic interview, the child victim disclosed to Miller that K.S. engaged in vaginal intercourse, cunnilingus, and digital penetration with her. *Accord State v. Hammonds*, 2024-Ohio-1259, ¶ 2 (1st Dist.) ("hold[ing] that victim statements in medical records and forensic interviews describing penetrative acts establish sexual conduct as an element of rape and suffice to sustain a conviction for rape in violation of R.C. 2907.02(A)(1)(b)"). Consequently, viewing the evidence in a light most favorable to the prosecution, we conclude that K.S.'s rape adjudications are based on sufficient evidence.

{¶15} Having concluded that K.S.'s rape adjudications are based on sufficient evidence, we next address K.S.'s argument that his rape adjudications are against the manifest weight of the evidence. K.S. argues his rape adjudications are against the manifest weight of the evidence because the trial court lost its way by relying on unreliable and conflicting evidence. Specifically, he asserts that the child witness's testimony was contradicted by two defense witnesses—Nathan and Kayla—and that the non-testifying child victim's uncorroborated hearsay statements from the CAC interview described a physically improbable event.

{¶16} As with many sexual-abuse cases, this case presents the "classic 'he-said/she-said'" scenario, "with no physical evidence to corroborate the [victims'] allegation[s]." *In re N.Z.*, 2011-Ohio-6845, ¶ 79 (11th Dist.). "Thus, credibility of the witnesses was the primary factor in determining guilt." *Id.* As we noted above, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d 230 at, paragraph one of the syllabus. "When examining witness credibility, 'the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact.'" *In re N.Z.* at ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it." *Id.* "'"A verdict is not against the manifest weight of the evidence because the [jury] chose to believe the State's witnesses rather than the defendant's version of the events."'" *State v. Missler*, 2015-Ohio-1076, ¶ 44 (3d Dist.), quoting *State v. Bean*, 2014-Ohio-908, ¶ 15 (9th Dist.), quoting *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).

{¶17} In this case, the trial court heard the child victim's account of the incident through the CAC interview and the trial court found her credible. *See In re X.F.*, 2025-Ohio-2730, ¶ 18 (3d Dist.). "Critically, in a case resting on competing narratives, the trier of fact does not lose its way when the victim's testimony is substantiated by direct and circumstantial corroborating evidence."

*Id.* The trial court in this case was not only presented with the child victim's detailed account, but it was also presented with expert testimony validating that account as beyond a six-year-old's typical knowledge, and an eyewitness testimony placing K.S. and the child victim together under a "moving blanket."

{¶18} Indeed, the child victim's account of the three sexual acts was corroborated by the expert testimony of Dr. Catherine Huber ("Dr. Huber"), a child abuse pediatrician at Nationwide Children's Hospital. Specifically, Dr. Huber testified that the child victim's detailed knowledge of the sexual acts was beyond the knowledge of a typical six-year-old child. Furthermore, the child victim's account was circumstantially corroborated by the child witness's testimony, who testified to seeing K.S. and the child victim "under a blanket" on the floor and observing that blanket "going up and down." (Oct. 9, 2024 Tr., Vol. I, at 145-146). While the defense presented conflicting testimony from Nathan and Kayla denying that the child witness ever reported this to them, the trier of fact, as the sole judge of credibility, was entitled to believe the State's evidence and determine that K.S. raped the child victim. *Accord In re X.F.* at ¶ 19.

{¶19} For these reasons, we conclude that the trier of fact did not clearly lose its way and create a manifest miscarriage of justice that K.S.'s rape adjudications must be reversed and a new trial ordered. *Compare Leugers*, 2018-Ohio-5219, at ¶ 40 (3d Dist.). Therefore, K.S.'s rape adjudications are not against the manifest weight of the evidence.

{¶20} K.S.'s first assignment of error is overruled.

**Second Assignment of Error**

**The Trial Court Erred When It Permitted The State To Introduce The Victim's CAC Interview, Violating [K.S.'s] Right Of Confrontation.**

**Third Assignment of Error**

**The Trial Court Erred When It Failed To Conduct A Competency Hearing Of The Victim, Violating Evidence Rule 601, 807 And [K.S.'s] Right Of Confrontation.**

**Fourth Assignment of Error**

**The Trial Court Erred When It Found The Child Witness To Be Competent To Testify And Not Allowing [K.S.] To Be Present For The Competency Hearing And Further Erred When It Permitted Her To Testify From a Separate Room, Violating [K.S.'s] Right of Confrontation.**

{¶21} In his second and third assignments of error, K.S. challenges the trial court's interrelated evidentiary decisions regarding the child victim and the child witness. In particular, in his second assignment of error, K.S. contends that the trial court erred by admitting the child victim's CAC interview, arguing it was inadmissible hearsay that violated his right of confrontation. K.S. specifically argues in his third assignment of error that the trial court committed prejudicial error by failing to conduct an Evid.R. 807 competency hearing, which he asserts was required because the State used the child victim's out-of-court statements as a substitute for her unavailable testimony. Finally, in his fourth assignment of error, K.S. argues that the trial court erred by finding the child witness competent

to testify and by permitting her to testify remotely without making the mandatory findings under R.C. 2152.81.

*Standard of Review*

**{¶22}** Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. *See also State v. Bennett*, 2019-Ohio-4937, ¶ 36 (3d Dist.) ("A trial court's decision to admit statements under Evid.R. 807 is reviewed under an abuse of discretion standard."); *State v. Branch*, 2013-Ohio-3192, ¶ 78 (3d Dist.) (reviewing competency determinations under Evid.R. 601 for an abuse of discretion); *State v. Messenger*, 2022-Ohio-3120, ¶ 55 (7th Dist.) (reviewing the trial court's decision to permit remote child testimony for an abuse of discretion). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). Relevantly, "[t]his deferential standard of review is particularly appropriate for a trial court's determination of a child witness's competency since it had the opportunity to 'observe the child's appearance, his or her manner of responding to the questions, general demeanor and any indicia of ability to relate the facts accurately and truthfully.'" *Branch* at ¶ 78, quoting *State v. Frazier*, 61 Ohio St .3d 247, 251 (1991).

**{¶23}** "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

**{¶24}** "The Confrontation Clause bars the admission of testimonial statements of a witness who did not appear at trial unless the witness was unavailable to testify and the defendant had . . . a prior opportunity for cross-examination of the witness." *In re A.W.*, 2025-Ohio-4554, ¶ 15 (10th Dist.). When evaluating the Confrontation Clause, the United States Supreme Court "did not define the word 'testimonial' but stated that the core class of statements implicated by the Confrontation Clause includes statements 'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Maxwell*, 2014-Ohio-1019, ¶ 34, quoting *Crawford v. Washington*, 541 U.S. 36, 52 (2004). *See also McKelton*, 2016-Ohio-5735, at ¶ 185 ("'[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony."'"), quoting *Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011). To rank as testimonial, a statement must have a primary purpose of establishing or proving past events potentially relevant to a later criminal prosecution. *Bullcoming v. New Mexico*, 564 U.S. 647, 659 (2011), fn. 6.

"Nevertheless, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59.

{¶25} The Supreme Court of Ohio, in applying the Confrontation Clause analysis to statements made during CAC interviews, distinguishes admissibility based on the interview's primary purpose. *State v. Arnold*, 2010-Ohio-2742, ¶ 28. *See State v. Warman*, 2017-Ohio-244, ¶ 48 (12th Dist.) (noting that the Supreme Court's analysis in "*Arnold* focused on the admissibility of these statements under the Confrontation Clause and not under Evid.R. 803(4)"). Statements made to CAC interviewers that serve a primarily forensic or investigative purpose are considered testimonial; therefore, such statements are inadmissible if the child declarant is unavailable for cross-examination. *Arnold* at paragraph one of the syllabus. Conversely, statements are considered nontestimonial when their primary purpose is medical diagnosis and treatment, and such statements are admissible without offending the Confrontation Clause. *Id.* at paragraph two of the syllabus.

{¶26} Moreover, "[r]egardless of whether a child less than ten years old has been determined to be competent to testify pursuant to Evid.R. 601, the child's statements may be admitted at trial as an exception to the hearsay rule pursuant to Evid.R. 803(4) if they were made for purposes of medical diagnosis

-14-

or treatment." *State v. Muttart*, 2007-Ohio-5267, syllabus. "Evid.R. 803(4) provides that a hearsay statement made for purposes of medical diagnosis or treatment is not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Pate*, 2021-Ohio-1838, ¶ 63 (2d Dist.). "Specifically, the rule permits '[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *Id.*, quoting Evid.R. 803(4). "'Such statements are deemed to be trustworthy and admissible because "the effectiveness of the treatment depends upon the accuracy of information given to the physician [so] the declarant is motivated to tell the truth."'" *Id.*, quoting *State v. Hazel*, 2012-Ohio-835, ¶ 45 (2d Dist.), quoting *State v. Brewer*, 2003-Ohio-3423, ¶ 28 (6th Dist.).

{¶27} Critically, "'[s]tatements made by a child during a medical examination identifying the perpetrator of sexual abuse, if made for purpose of diagnosis [or] treatment, are admissible pursuant to Evid.R. 803(4), when such statements are made for the purposes enumerated in that rule.'" *In re S.L.*, 2016-Ohio-5000, ¶ 25 (3d Dist.), quoting *State v. Dever*, 64 Ohio St.3d 401 (1992), paragraph two of the syllabus. "'The salient inquiry is whether the child's statements were made for purposes of diagnosis [or] treatment rather than for some other purpose.'" *Id.*, quoting *State v. Gutierrez*, 2011-Ohio-3126, ¶ 52 (3d

-15-

Dist.). "One such 'other purpose' is the gathering of forensic information to investigate and potentially prosecute a defendant." *State v. Rose*, 2012-Ohio-5607, ¶ 42 (12th Dist.). "To the extent that a victim's statement to a nurse is for investigative purposes in furtherance of such criminal prosecution, the statements will not fall within the hearsay exception under Evid.R. 803(4). Rather, such statements are considered 'testimonial' and implicate the Confrontation Clause." *Id.*, quoting *Arnold*, 2010-Ohio-2742, at ¶ 28.

{¶28} Accordingly, "'[h]earsay statements made to a social worker may be admissible *if* they are made for purposes of medical diagnosis or treatment.'" (Emphasis in original.) *In re S.L.* at ¶ 25, quoting *State v. Goings*, 2012-Ohio-1793, ¶ 19 (3d Dist.). "'If the social worker encountered the victim for the purpose of diagnosis or treatment, then the evidence may be admissible. However, if the statement was made during the course of a fact-finding or investigatory procedure, Evid.R. 803(4) is not applicable.'" *Id.* at ¶ 26, quoting *In re Weatherholt*, 2000 WL 126662, *5 (3d Dist. Feb. 4, 2000). *See also State v. Moore*, 2019-Ohio-1671, ¶ 26 (2d Dist.) (noting that "the Ohio Supreme Court recognized that child-advocacy centers are unique insofar as a single interview with a child serves 'dual purposes,' which are: '(1) to gather forensic information to investigate and potentially prosecute a defendant for the offense and (2) to elicit information necessary for medical diagnosis and treatment of the victim'"), quoting *Arnold* at ¶ 33.

{¶29} At K.S.'s adjudicatory hearing, the child victim did not testify. The State instead presented her account through the video-recorded CAC interview, which was the only direct evidence of the alleged acts. Even though the State attempted to redact testimonial portions of the recording by "fast forwarding" through them, the trial court admitted the entire, unredacted recording into evidence over K.S.'s objection.

{¶30} In its November 18, 2024 judgment entry finding K.S. delinquent of the charges in the complaint, the trial court made extensive findings based on this interview. Specifically, the trial court determined that the child victim's statements were nontestimonial and admissible under Evid.R. 803(4) as statements for medical diagnosis. In its analysis, the court trial reasoned that the statements were non-testimonial—and thus did not violate the Confrontation Clause—because they were made for the primary purpose of medical diagnosis. To support this finding, the trial court relied on the trial testimonies of Miller and Dr. Huber, who confirmed that the interview's purpose was to guide the victim's medical examination and treatment. The trial court likewise concluded that the statements were properly admissible under the hearsay exception in Evid.R. 803(4).

{¶31} In addressing these related issues, we note that the Confrontation Clause and Evid.R. 803(4) analyses are necessarily intertwined. Importantly, the "primary purpose" test, which the Supreme Court of Ohio established in *Arnold*

to resolve Confrontation Clause issues, is also highly "'instructive'" for determining whether a statement's purpose was medical under Evid.R. 803(4). *State v. Nkoyi*, 2024-Ohio-3144, ¶ 48, fn. 5 (12th Dist.), quoting *State v. Warman*, 2017-Ohio-244, ¶ 48 (12th Dist.). Therefore, this central inquiry into the primary purpose for the interview of the child victim is dispositive since its resolution will determine the outcome of both the Confrontation Clause and hearsay admissibility issues.

{¶32} Following the Supreme Court's analysis in *Arnold*, our review of the record in this case reveals that the portion of the CAC interview that was presented during trial contained nontestimonial statements for medical diagnosis admissible under Evid.R. 803(4), while also including other statements that were at least arguably testimonial. Even though arguably testimonial statements were presented during K.S.'s bench trial, the record nevertheless establishes a primary medical purpose for the interview's core statements. *See Arnold*, 2010-Ohio-2742, at ¶ 41 (acknowledging that the fact that an interview contains both testimonial and nontestimonial statements "presents no great problem").

{¶33} In analyzing the admissibility of such statements under Evid.R. 803(4), this court has concluded that interviews conducted at a CAC (situated in a hospital setting) are admissible hearsay. *Accord State v. Speicher*, 2020-Ohio-3845, ¶ 35 (3d Dist.) (determining that "the recorded interview at Nationwide Children's Hospital between [the social worker] and [the victim, which was]

played at trial" was admissible under Evid.R. 803(4)). The record in this case affirms that conclusion.

**{¶34}** Indeed, the record reflects that the child victim's statements made during her interview with Miller were for medical diagnosis and treatment and there is no evidence that Miller was acting on behalf of law enforcement or seeking details to further a police investigation. *Accord State v. Smith*, 2023-Ohio-1613, ¶ 39 (3d Dist.) (analyzing that "the statements made during [the social worker's] forensic interviews [conducted at CAC] were for the children's medical diagnosis and treatment"). *See also In re S.L.* at ¶ 28 (analyzing that the witness was "a social worker employed by the Child Advocacy Center at Children's Hospital, as opposed to being employed by the county"). Specifically, Miller testified that the purpose of the interview was for medical diagnosis, and Dr. Huber corroborated this, testifying that the forensic interview guides her medical examination and was necessary to determine "treatment and testing recommendations . . . ." (Oct. 9, 2024 Tr., Vol. II, at 173). *See Arnold* at ¶ 37-38. This testimony establishes that the child victim's core statements regarding the sexual conduct were "necessary for the proper medical diagnosis and treatment" of the child victim. *Arnold* at ¶ 38. Moreover, contrary to K.S.'s argument on appeal, the mere fact that the information, gathered for a medical purpose, may later be used by the state "does not change the fact that the statements were not made for the state's use." *Muttart*, 2007-Ohio-5267, at ¶ 62.

{¶35} Consequently, this record—supported by this court's precedent and the trial testimony—establishes that the statements' primary purpose was medical diagnosis, rendering them admissible under Evid.R. 803(4) and nontestimonial for purposes of the Confrontation Clause. *See State v. Larr*, 2023-Ohio-2128, ¶ 61 (5th Dist.) (concluding that a child's statements to a CAC interviewer were for medical diagnosis, rendering them both admissible under Evid.R. 803(4) and nontestimonial for Confrontation Clause purposes).

{¶36} As to the arguably testimonial statements that were also presented, our analysis is both guided and restrained by the fact that K.S. was tried by the court. *See In re A.W.*, 2025-Ohio-4554, at ¶ 16 (10th Dist.). Critically, "Ohio courts 'indulge in the usual presumption that in a bench trial in a criminal case the court considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *Id.*, quoting *State v. White*, 15 Ohio St. 2d 146, 151 (1968).

{¶37} Here, K.S. failed to direct us to any evidence in the record reflecting that the trial court relied on any evidence that could be even arguably inadmissible testimonial evidence. *Compare id.* at ¶ 18 ("[A.W.] has not pointed to any specific inadmissible or unfairly prejudicial statements—rather, he complains that the medical records and the video recorded CAC interviews should not have been admitted at all."). And, our review of the record has not revealed any affirmative indication that the trial court considered any

inadmissible evidence for any purpose, let alone an improper one. *Accord id.* Consequently, we must presume that the trial court did its duty, which "required [it] to consider the admissibility of evidence, but then set aside any inadmissible evidence when evaluating whether the state has proved its case beyond a reasonable doubt." *Id.* at ¶ 17. We therefore presume that the trial court properly considered the nontestimonial statements detailing the three sexual acts and set aside any (arguably) testimonial statements. For these reasons, K.S.'s argument that his Confrontation Clause rights were violated is without merit.

{¶38} K.S.'s third assignment of error, alleging that the trial court failed to conduct a competency hearing under Evid.R. 807, is also without merit. Ohio's "evidentiary rules provide generally that '[e]very person is competent to be a witness,' but exceptions to that rule exist, including one for 'children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly.'" *Muttart*, 2007-Ohio-5267, at ¶ 31, quoting Evid.R. 601(A). Evid.R. 807 is a specific hearsay exception in Ohio law, often used in abuse cases, that permits the admission of an out-of-court statement made by a child under twelve describing sexual or physical abuse. However, "the State need not satisfy the rigors of Evid.R. 807(A) if the child's statement can be admitted through a different hearsay exception." *State v. Lortz*, 2008-Ohio-3108, ¶ 20 (9th Dist.).

{¶39} "There are fundamental differences between Evid.R. 807 and Evid.R. 803(4)." *In re I.W.*, 2008-Ohio-2492, ¶ 11 (9th Dist.). "Evid.R. 807(A) contains four elements that must be satisfied before a child's out-of-court statement regarding abuse can be admitted." *Lortz* at ¶ 20. "Evid.R. 807 specifically requires the court to find that 'the totality of the circumstances surrounding the making of the statement provides particularized guarantees of trustworthiness that make the statement at least as reliable as statements admitted pursuant to Evid.R. 803 and 804.'" *In re I.W.* at ¶ 11, quoting Evid.R. 807(A)(1). "In contrast, Evid.R. 803(4) contains no such requirement." *Id.* Rather, "the Evid.R. 803(4) test requires only that a statement be made for medical diagnosis or treatment to be deemed admissible." *Id.* "Consequently, if a child's statements were made for the purpose of medical diagnosis or treatment, the State need not prove the elements of Evid.R. 807(A)." *Lortz* at ¶ 20. In other words, "if the child's statements are made for purposes of medical diagnosis or treatment, they are admissible as an exception to the medical purposes hearsay rule regardless of whether the child has been determined to be competent." *In re I.W.* at ¶ 11.

{¶40} In this case, the trial court admitted the core statements from the CAC interview under Evid.R. 803(4), not Evid.R. 807. Therefore, because we already determined that the child victim's statements were properly admitted under Evid.R. 803(4), no separate competency determination was required. *See Muttart* at ¶ 46 (holding that a child's statements for medical diagnosis are

admissible under Evid.R. 803(4) regardless of whether the child has been determined competent to testify under Evid.R. 601). *See also State v. Said*, 71 Ohio St.3d 473, 477 (1994) (holding that, to admit a child's statement under Evid.R. 807, a court must first find the declarant was competent at the time the statement was made). Consequently, the trial court acted within the bounds of its discretion by admitting the child victim's statements. *See Muttart* at ¶ 46, fn. 5 (affirming a trial court's discretion to determine which hearsay exception, such as Evid.R. 803(4) or Evid.R. 807, is the most appropriate basis for admitting evidence).

{¶41} K.S. raises a similar set of challenges regarding the child witness, first arguing that the trial court abused its discretion by finding the child witness competent to testify. Evid.R. 601 governs witness competency and provides that, while every person is competent, an exception exists for "children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." Evid.R. 601(A); *Branch*, 2013-Ohio-3192, at ¶ 79 (3d Dist.). "Under Evid.R. 601(A)'s plain terms, 'the competency of individuals ten years or older is presumed, while the competency of those under ten must be established' by the proponent of the witness's testimony." *Branch* at ¶ 79, quoting *State v. Clark*, 71 Ohio St.3d 466, 469 (1994). "Regardless of the child witness's age, '[t]he rule

favors competency.'"  *Id.*, quoting *Turner v. Turner*, 67 Ohio St.3d 337, 343 (1993).

> In determining whether a child is competent to testify under Evid.R. 601(A), a trial court must consider the following factors: "'(1) the child's ability to receive accurate impressions of fact or to observe acts about which he or she will testify, (2) the child's ability to recollect those impressions or observations, (3) the child's ability to communicate what was observed, (4) the child's understanding of truth and falsity, and (5) the child's appreciation of his or her responsibility to be truthful.'"

*Id.*, quoting *State v. Brock*, 2008-Ohio-3220, ¶ 51 (3d Dist.), quoting *Frazier* at 251.

{¶42} On appeal, K.S. contends that the trial court abused its discretion by determining that the child witness was competent to testify because her responses failed to satisfy the factors outlined in *Frazier*.  However, rather than pointing to a specific factor, K.S. argues that the trial court's own expressed "hesitancy" following its voir dire examination of the child witness—specifically the trial court's comment that it "d[id]n't know if she'll recall everything"—demonstrates that the trial court abused its discretion by finding her competent to testify.  (Oct. 9, 2024 Tr., Vol. I, at 121).

{¶43} K.S.'s argument is not persuasive.  Rather, our review of the record reveals that the trial court did not abuse its discretion by determining that the child witness was competent to testify. Specifically, as the record demonstrates, during the trial court's voir dire examination of the child witness, the child witness indicated that she knew certain facts such as her age (nine years old) and

birthday; her grade in school, the school that she attends, and her teacher's name; where she lives; and recalled facts from her last birthday party and a recent trip to the zoo. The child witness indicated that she understood the difference between "play acting or imagining stuff than what's real" and the difference between a truth and a lie as well as the consequences for telling a lie. (*Id.* at 107). Moreover, the child witness correctly identified truthful and untruthful statements and articulated her understanding of the promise to tell the truth.

{¶44} While K.S. focuses on the trial court's "hesitancy" comment, this isolated remark is not fatal to the trial court's competency determination. *See Branch*, 2013-Ohio-3192, at ¶ 81 (3d Dist.). Rather, the trial court properly considered the totality of the evidence before it and was entitled to decide that the evidence of the child witness's competency—her understanding of truth, falsity, and her duty to be truthful—deserved greater weight than its own passing observation, which related more to the completeness of her future recall than her fundamental ability to relate facts. *See id.* (finding an isolated deficiency, such as failing to define a lie, is not fatal when the totality of the evidence supports competency). Consequently, we conclude that the trial court's determination that the child witness was capable of receiving just impressions and relating them was not an abuse of discretion. *Accord id.* at ¶ 80.

{¶45} Having concluded that the trial court properly determined that the child witness was competent to testify at trial, we now turn to K.S.'s argument

that the trial court abused its discretion by permitting the child witness to testify by remote contemporaneous video. Ohio law permits an alleged child victim under 13 to testify outside the physical presence of the alleged offender, as long as specific statutory conditions are satisfied. *State v. Svoboda*, 2021-Ohio-4197, ¶ 81 (1st Dist.); R.C. 2152.81.[3] "The Ohio Supreme Court has held testimony of a child victim by videotaped deposition does not violate the Confrontation Clause, as long as the defendant has an opportunity to view the child and the child's demeanor, and has a full opportunity to cross-examine the child." *State v. Wolters*, 2022-Ohio-538, ¶ 37 (5th Dist.), citing *State v. Self*, 56 Ohio St. 3d 73, 77 (1990).

**{¶46}** Before ordering such remote testimony, the trial court must find that the child witness is unavailable to testify in the juvenile's physical presence due to one or more of the circumstances listed in R.C. 2152.81(E). A reviewing court will affirm the trial court's determination under R.C. 2152.81 if its findings are supported by competent, credible evidence. *See Svoboda* at ¶ 81 (applying the same standard to the parallel adult statute).

**{¶47}** Here, K.S. presents a two-part argument challenging the trial court's application of R.C. 2152.81. K.S. first contends that the statute does not apply to the child witness, arguing she was merely a witness and not a victim as

---

[3] R.C. 2152.81 governs this procedure for juvenile defendants in juvenile court. Its parallel statute, R.C. 2945.481, governs the same procedure for adult defendants in criminal court.

defined by the statute. Ohio courts have generally applied a broad definition of "victim" as it pertains to these child-testimony statutes, recognizing that "'[a] child who witnesses the sexual abuse of another child can be a victim within the meaning of the statute.'" *Id.* at ¶ 83, quoting *State v. Lukacs*, 2010-Ohio-2364, ¶ 28 (1st Dist.). However, we need not reach that issue here. Indeed, even if we assume without deciding that the child witness was not a "victim" for purposes of R.C. 2152.81, any error in the admission of her testimony was harmless.

**{¶48}** Regardless of the child witness's status as a victim, K.S. separately argues that, even if the statute applies, the trial court committed error by failing to make the mandatory findings under R.C. 2152.81(C)(2) and (E)—namely, that the child witness was "unavailable" or would suffer a "substantial likelihood" of "serious emotional trauma" from testifying in the same room. K.S.'s argument on this point has merit. Notably, the record reflects that, in its October 8, 2024 entry, the trial court based its decision entirely on R.C. 2152.81(C)(1)(a), concluding that the children's ages *required* the remote testimony. The court made no additional findings under R.C. 2152.81(C)(2) and (E) to determine the requisite necessity for the remote testimony.

**{¶49}** While R.C. 2152.81(C)(1)(a) permits a court to order remote testimony for a child witness under 13, this provision is not self-executing. *See State v. Wallace*, 2024-Ohio-4955, ¶ 3 (12th Dist.) (analyzing that a motion for remote testimony under division (C)(1)(a) cannot be granted until the court first

makes the requisite "necessity" findings as provided in (C)(2) and (E)). R.C. 2152.81(C)(2) explicitly states that the court must first "determine that the child victim is unavailable . . . due to one or more of the reasons set forth in division (E) of this section."

R.C. 2152.81(E) lists these specific circumstances as:

(1) The persistent refusal of the child victim to testify despite judicial requests to do so; (2) The inability of the child victim to communicate about the alleged violation or offense because of extreme fear, failure of memory, or another similar reason; or (3) The substantial likelihood that the child victim will suffer serious emotional trauma from so testifying.

R.C. 2152.81(E). In this case, by relying solely on R.C. 2152.81(C)(1)(a) and by failing to conduct the required analysis under divisions (C)(2) and (E), the trial court failed to apply the correct law. Thus, the trial court erred by permitting the child witness to testify remotely. *See State v. Abraham*, 2024-Ohio-5600, ¶ 47 (8th Dist.) (concluding that the trial court erred by permitting the witness to testify remotely because "the trial court made no 'case-specific finding,' to show why it was 'necessary' for [the witness] to testify remotely").

**{¶50}** However, such an error is subject to a harmless error analysis. *State v. Carter*, 2024-Ohio-1247, ¶ 46 ("Our determination that the trial court erred in admitting the remote testimony does not end our inquiry. We must also determine whether the trial court's error was harmless."). The harmless-error doctrine is governed by Crim.R. 52(A), which states "[a]ny error, defect, irregularity, or

variance which does not affect substantial rights shall be disregarded." *See also* Evid.R. 103(A). To hold an error harmless, a "'court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" *Carter* at ¶ 47, quoting *Chapman v. California*, 386 U.S. 18, 24 (1967). *See also State v. Morris*, 2014-Ohio-5052, ¶ 33 (applying the same harmless-error standard for both constitutional and non-constitutional errors). Confrontation Clause violations have been deemed harmless when the remaining evidence, standing alone, constitutes overwhelming proof of the offender's guilt. *Carter* at ¶ 47. Overwhelming proof is apparent when the improperly admitted statements are purely cumulative, serving at most to corroborate certain details of the State's case. *Id.*

**{¶51}** Here, even after stripping away the child witness's testimony, the remaining evidence presented at trial overwhelmingly supports K.S.'s adjudications. *Accord id.* at ¶ 49. Importantly, as K.S. himself concedes, the child witness "did not directly observe actual sexual abuse," and her testimony about the "moving blanket" was purely cumulative, serving *at mos*t to corroborate certain details of the child victim's account. (Appellant's Brief at 19); *Carter* at ¶ 47 ("Overwhelming proof becomes readily apparent when 'the allegedly inadmissible statements . . . at most tend[ ] to corroborate certain details' of the state's case-in-chief."), quoting *Schneble v. Florida*, 405 U.S. 427, 431 (1972).

{¶52} Indeed, the crux of the State's case was the CAC interview of the child victim, which provided the sole direct evidence of the sexual conduct at issue in this case, and this evidence was corroborated by Dr. Huber's expert testimony that the child victim's knowledge was beyond that of a typical 6-year-old. *Compare id.* (analyzing that the trial court's decision to permit the witness to testify by video was harmless error because the "crux of the state's case" was the victim's testimony, which "vividly recounted the sexual conduct" and "satisfied the statutory definition of 'sexual conduct'"). Therefore, based on our review of the overwhelming, properly admitted evidence, we conclude that there is no reasonable possibility that the child witness's testimony contributed to the finding of delinquency. *Accord id.* at ¶ 52. Thus, the trial court's decision to permit the child witness to testify by remote contemporaneous video was harmless beyond a reasonable doubt. *Id.* at ¶ 53.

{¶53} For these reasons, K.S.'s second, third, and fourth assignments of error are overruled.

**Fifth Assignment of Error**

**Appellant Was Deprived Effective Assistance Of Counsel Resulting In Appellant Not Receiving a Fair Trial.**

{¶54} In his fifth assignment of error, K.S. argues that he received ineffective assistance of trial counsel. Specifically, he contends that his trial counsel's performance was deficient for failing to fully develop his alibi and for

failing to proffer testimony that would have supported the defense's theory that the child victim had a motive to fabricate the allegations.

*Standard of Review*

**{¶55}** "When considering an ineffective assistance of counsel claim in a juvenile case, we apply the same analysis as we would for adults: whether there was a deficiency in the performance of counsel and that, but for counsel's errors, there was a reasonable possibility that the outcome of the proceeding would have been different." *In re K.B.*, 2018-Ohio-2619, ¶ 14 (3d Dist.). Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶56}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient

to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶57} On appeal, K.S. argues that his trial counsel was ineffective for (1) failing to fully develop testimony supporting his alibi that he was often not present in the home; (2) failing to proffer testimony from Heather S. ("Heather"), Nathan's sister, regarding the child victim's alleged admission of being "schooled on what to say"; (3) failing to fully question Nathan and Kayla about the child victim's mother's history of influencing her children to make untrue allegations; and (4) failing to establish a clear record of a children services case to show a motive to fabricate. (Appellant's Brief at 21). K.S.'s claims are not persuasive and fail for several reasons.

{¶58} First, to the extent that K.S.'s claims rely on evidence outside of the record, such claims are not appropriate for consideration on direct appeal. *See State v. Anders*, 2017-Ohio-2589, ¶ 66 (3d Dist.). Because "[e]stablishing the prejudice from the failure to submit this evidence at trial would require proof outside the record," any argument as to the effect of these claims is speculative and not properly before this court. *State v. Harner*, 2020-Ohio-1184, ¶ 42 (12th Dist.), citing *State v. Hartman*, 93 Ohio St.3d 274, 299 (2001).

{¶59} Moreover, to the extent that K.S.'s claims are not based on matters outside the record, they fail as a challenge to trial strategy. Counsel's decisions

regarding the questioning of witnesses, including the scope of direct and cross-examination, fall within the ambit of trial strategy and debatable trial tactics do not establish ineffective assistance of counsel. *Conway*, 2006-Ohio-2815, at ¶ 101; *State v. Nusser*, 2003-Ohio-4414, ¶ 39 (5th Dist.). Indeed, an appellate court's review of an ineffective assistance of counsel claim does not extend to scrutinizing the strategic decisions made by trial counsel regarding the tactical examination of witnesses. *State v. Cummings*, 2024-Ohio-6106, ¶ 40 (10th Dist.). Importantly, "'[a] defendant is not deprived of effective assistance of counsel when counsel chooses, for strategic reasons, not to pursue every possible trial tactic.'" *State v. Nelson*, 2016-Ohio-7115, ¶ 33 (6th Dist.), quoting *State v. Birr*, 2011-Ohio-796, ¶ 25 (6th Dist.).

**{¶60}** The decision not to introduce evidence of an alibi or the children services case are classic tactical decisions that we will not second-guess on appeal. *See State v. Brown*, 2002-Ohio-6765, ¶ 57 (3d Dist.) (asserting that counsel's decision not to present certain evidence, which could have been undermined on cross-examination or opened the door to other harmful evidence, is a matter of trial strategy); *State v. O'Boyle*, 2024-Ohio-5480, ¶ 19 (determining that the decision not to pursue an alibi to be a tactical decision); *State v. Hennis*, 2005-Ohio-51, ¶ 26 (2d Dist.) (finding that trial counsel's decision not to subpoena children services records was a reasonable trial tactic where the

appellant's claim about the records' contents was speculative and the underlying defensive theory was presented to the jury through other means).

{¶61} As to the alibi argument, this is especially true given the complaint alleged the acts occurred over a 16-month period, from November 2021 to April 2023. K.S.'s proposed alibi—a general claim that he was "often not present"—is not a defense to acts that could have occurred at any time during that wide window. At best, such testimony would have simply contradicted the child victim's account, and the trial court, in this bench trial, would have been responsible for weighing that conflict. *See O'Boyle* at ¶ 20. Accordingly, K.S. cannot demonstrate a reasonable probability that this vague alibi evidence would have altered the outcome of his bench trial. *See id.*

{¶62} Likewise, the decision not to subpoena the children services records was a reasonable tactic. *See Hennis* at ¶ 26 (determining that trial counsel's decision not to subpoena children services records was a reasonable trial tactic where the appellant's claim about the records' contents was speculative and the underlying defensive theory was presented to the jury through other means). Critically, K.S. not only *speculates* as to what these records would have shown, but the underlying defensive theory that he sought to prove—that the child victim's mother had a motive to fabricate—was already presented to the trial court through the testimony of Nathan and Kayla. Therefore, K.S. cannot show

prejudice from his trial counsel's decision not to introduce cumulative, and potentially speculative, evidence. *See id.* at ¶ 27.

{¶63} Finally, as to K.S.'s claim regarding his trial counsel's failure to proffer Heather's testimony fails because he cannot demonstrate prejudice. The proposed testimony—that the victim admitted to being "schooled on what to say"—is presumptively inadmissible hearsay, and K.S. failed to argue or demonstrate on appeal how this testimony would have been admitted under any valid hearsay exception. *See State v. Clowers*, 134 Ohio App.3d 450, 456 (1st Dist. 1999) (finding no prejudice where the appellant failed to demonstrate that the un-proffered statement satisfied all prongs for admissibility under Evid.R. 804(B)(3)). Because K.S. failed to demonstrate that the testimony was admissible, he cannot show that his trial counsel's failure to proffer it was prejudicial.

{¶64} For these reasons, K.S.'s trial counsel was not ineffective.

{¶65} K.S.'s fifth assignment of error is overruled.

{¶66} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the juvenile court.

***Judgment Affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 14-25-13

# JUDGMENT ENTRY

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgment of the trial court is affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. *See* App.R. 30.

---

William R. Zimmerman, Judge

---

Mark C. Miller, Judge

---

John R. Willamowski, Judge

DATED:
/hls